FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2012 AUG 17  P 4:26

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

-----------------------------------------------------x

PRECISION FRANCHISING LLC

       Plaintiff,

Civil Action No. 1:12CV922
CMH/IDD

v.

ANAS KHALID

       Defendant.

-----------------------------------------------------x

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract and trademark infringement. Plaintiff Precision Franchising LLC ("Precision Franchising") seeks damages and injunctive relief against Defendant Anas Khalid ("Defendant").

### THE PARTIES

1. Plaintiff Precision Franchising is a Virginia limited liability company with its principal place of business at 748 Miller Drive, S.E., Leesburg, Virginia.

2. Defendant Anas Khalid is an individual residing in Texas with an address of 201 Oxbow Drive, Irving, Texas, operating an auto care center at 2613 Marsh Lane, Carrollton, TX.

## JURISDICTION

3.     This Court has subject matter jurisdiction over the claims stated herein under the Lanham Act, 15 U.S.C. § 1051, et seq., pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338. This Court also has subject matter jurisdiction over the claims stated herein by virtue of 28 U.S.C. § 1332, as the matter in controversy is between citizens of different states, and exceeds the sum of $75,000.00, exclusive of interest and costs. The Court further has subject matter jurisdiction by virtue of the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims against Defendant occurred in this District. In addition, Defendant has contractually agreed to this venue.

5.     Personal jurisdiction is also present. Defendant has contracted to supply services or things in this district and has caused tortious injury in this district by an act or omission outside this district. In addition, Defendant has contractually agreed to personal jurisdiction.

## BACKGROUND FACTS

### The Precision Tune Auto Care System

6.     Precision Franchising is the licensor of the PRECISION TUNE AUTO CARE® system. As such, Precision Franchising has licensed others to operate automotive businesses identified with the PRECISION TUNE AUTO CARE® service marks and logos as part of the PRECISION TUNE AUTO CARE® system (the "Precision Tune Marks"), and to utilize confidential methods and procedures development by Precision Tune Auto Care, Inc. ("PTAC"),

2

which wholly owns Precision Franchising, for the operation of PRECISION TUNE AUTO CARE® service centers.

7. The Precision Tune Marks are registered in the United States Patent and Trademark Office and their registrations are in full force and effect. Precision Franchising has given public notice of the registrations of the Precision Tune Marks as provided by 15 U.S.C. § 1111.

8. The Precision Tune Marks are registered as follows:

| Mark/<br>First Use Date | Registration No./<br>Registration Date | Identification of<br>Goods/Services |
|---|---|---|
| **PRECISION TUNE**<br><br>February 1976 | 1,214,325<br><br>October 26, 1982 | Vehicle tune-up services, in Class 37 |
| **PRECISION TUNE & Design**<br><br>December 1977 | 1,214,326<br><br>October 26, 1982 | Vehicle tune-up services, in Class 37 |
| **PRECISION TUNE**<br><br>August 1982 | 1,259,155<br><br>November 29, 1983 | Spark plugs, in Class 7. |
| **PRECISION TUNE**<br><br>February 1976 | 1,497,068<br><br>July 19, 1988 | Vehicle tune-up and lubrication services, in Class 37. |
| **PRECISION TUNE AUTO CARE & Design**<br><br>August 1996 | 2,125,311<br><br>December 30, 1997 | Auto repair, maintenance, and lubrication services, in Class 37. |
| **PRECISION TUNE AUTO CARE**<br><br>August 1996 | 3,015,281<br><br>November 15, 2005 | Auto and vehicle tune-up, repair and maintenance services; repair and maintenance of automobile climate control and lighting systems, in Class 37. |

| Mark/<br>First Use Date | Registration No./<br>Registration Date | Identification of<br>Goods/Services |
|---|---|---|
| AMERICA'S NEIGHBORHOOD AUTO CARE EXPERTS<br><br>August 2004 | 3,091,303<br><br>May 9, 2006 | Auto and vehicle tune-up, repair and maintenance services; repair and maintenance of automobile climate control and lighting systems, in Class 37. |
| PRECISION TUNE AUTO CARE & TIRES & Design<br><br>October 2005 | 3,348,210<br><br>December 4, 2007 | Retail store services in field of tires, in Class 35; Auto repair, maintenance and lubrication services; installation, repair and maintenance of tires; maintenance of automobile climate control and lighting systems, in Class 37. |
| TUNED IN TO YOU<br><br>July 2007 | 3,414,235<br><br>April 22, 2008 | Auto and vehicle tune-up, lubrication, repair and maintenance services; repair and maintenance of automobile climate control and lighting systems, in Class 37. |

9. In addition to the registration of the Precision Tune Marks with the United States Patent and Trademark Office, Precision Franchising has acquired common law rights with respect to the Precision Tune Marks based on their use by Precision Franchising and its licensees. Precision Franchising has also acquired common law rights to trade dress that is common to Precision Franchising locations (the "Precision Trade Dress").

10. The Precision Tune Marks are inherently distinctive, as is the Precision Trade Dress. Through over thirty-five years of widespread use, sales, advertising, and promotion, the Precision Tune Marks have become famous and distinctive identifiers of quality automotive

products and services, and this fame and distinctiveness has inured to the benefit of Precision Franchising's business reputation.

11. In addition to providing a license to use the Precision Tune Marks and Precision Trade Dress in connection with the operation of PRECISION TUNE AUTO CARE® service centers, Precision Franchising provides franchisees with trade secrets for its use, including manuals, software and training (the "Manuals"). These materials are closely guarded and protected from disclosure to third parties, and Precision Franchising requires return of such materials at the termination of the franchise agreements.

### Defendant's Obligations Under the Franchise Agreement

12. Defendant and Precision Franchising entered into a Franchise Agreement effective December 10, 2008 (the "Agreement"), whereby Defendant acquired the right to operate an automotive service business (the "Franchised Business") located at 2613 Marsh Lane, Carrollton, TX 75007 (the "Center"). A copy of the Franchise Agreement is attached as Exhibit.

13. Pursuant to Paragraph 11.2.1 of the Agreement, Defendant agreed to use the Center solely for the operation of the Franchised Business.

14. Pursuant to Paragraph 11.2.4 of the Agreement, Defendant agreed to not offer any unauthorized products of any kind or character without the express written consent of Precision Franchising, and to promptly discontinue offering any products upon notice from Precision Franchising.

15. Pursuant to Paragraph 9.2.1 of the Agreement, Defendant agreed to use the Precision Tune Marks and Precision Trade Dress only for the operation of the Franchised Business or in advertising for the Franchised Business.

16. Pursuant to Paragraph 8.1 of the Agreement, Defendant agreed to conduct his business in accordance with the terms of the Precision Tune Auto Care Policies and Procedures Manual (the "Manual"), including Section III-1 of the Manual, requiring that only authorized, quality services are performed at the Center.

17. Pursuant to Paragraph 12.1 of the Agreement, Defendant agreed to maintain full, complete and accurate books, records and accounts prepared in accordance with generally accepted accounting principles and in the form and manner prescribed by Precision Franchising.

18. Pursuant to Paragraph 12.5 of the Agreement, Defendant agreed that if an audit revealed that gross sales of the Defendant were understated by three percent (3%) or more during the period audited, Defendant shall reimburse Precision Franchising all fees owed plus interest at eighteen percent (18%) or the highest rate of interest allowed and all costs and expenses in connection with the audit.

19. Pursuant to Paragraph 15.1.2 of the Agreement, Defendant further agreed that if he ceased to operate or otherwise abandoned the Franchised Business without Precision Franchising's prior consent, Precision Franchising would have good cause to immediately terminate the Agreement.

20. Pursuant to Paragraph 17.1.1 of the Agreement, Defendant agreed to immediately and permanently cease to use confidential methods and procedures development by PTAC and by Precision Franchising.

21. Pursuant to Paragraph 17.1.4 of the Agreement, Defendant agreed to deliver to Precision Franchising or its designee all Manuals used in the operation of the Franchised Business, and all other materials relating to the operation of the Franchised Business.

22. Pursuant to Paragraph 17.1.5, Defendant agreed to promptly pay all sums owed to Precision Franchise, its subsidiaries, affiliates and divisions, including but not limited to an amount ("Future Lost Profits") equal to the number of weeks remaining in the term of the Agreement, multiplied by the greater of (i) three hundred dollars ($300) or (ii) seven and one-half percent (7.5%) of gross sales per week, and reduced by twenty percent (20%) to determine its present value.

23. Pursuant to Paragraph 17.2 of the Agreement, Defendant agreed that in the event of default, he would pay to Precision Franchising all costs and expenses, including reasonable legal and accounting fees, incurred by Precision Franchising in connection with obtaining damages, injunctive, or other relief for the enforcement of any provisions of the Franchise Agreement or for the defense of any unsuccessful action or counterclaim made by Defendant.

24. Pursuant to Paragraph 18.3 of the Agreement, Defendant agreed that for a period of two (2) years after the termination of the Agreement, he would not operate any business similar to the Franchised Business and located within five miles of the area within a 1.7 mile radius of the Center.

## Defendant's Defaults

25. At least as early as March 22, 2011, Defendant has been advertising and selling vehicles and used tires at the Center.

26. Precision Franchising reiterated to Defendant on multiple occasions thereafter that he was prohibited from advertising and selling vehicles and used tires at the Center.

27. An audit of the Center for the time period from December 2008 to December 2010 showed that Defendant owed Precision Franchise at least $31,231.69 of unreported sales, plus royalties and ad fees.

28. An audit of the Center's 2011 records revealed that despite Precision Franchising's repeated demands, Defendant continued to sell unauthorized goods at the Center, and that Defendant owed Precision Franchising at least an additional $8,800.09 of unreported sales, plus royalties and ad fees due for 2011.

29. On March 26, 2012, Precision Franchising sent a notice of default to Defendant based on his breach of the Agreement.

30. An investigation conducted on July 24, 2012 by Precision Franchising revealed Defendant had removed exterior signage with the Precision Tune Marks and was operating the Center under the name "European Car Care."

31. Accordingly, pursuant to Paragraph 15.1.2 of the Agreement, Precision Franchising served Defendant with a termination notice on August 3, 2012.

32. Defendant's actions have caused and continue to cause irreparable harm to Precision Franchising, including harm to Precision Franchising's reputation and goodwill.

## COUNT I
### (Breach of Contract)

33. The allegations of Paragraphs 1 through 32 are hereby incorporated by reference.

34. Defendant has breached the express terms of the Franchise Agreement by, among other things, ceasing to operate or otherwise abandoning the Franchised Business without Precision Franchise's prior consent; failing to pay money owed to Precision Franchise for unreported sales, royalties, and ad fees owed; failing to use the Center solely for the operation of the Franchised Business; and knowingly maintaining false books or records and submitting false reports to Precision Franchise.

35. Defendant continues to breach the express terms of the Franchise Agreement by, among other things, withholding sums owed to Precision Franchise; failing to deliver to Precision Franchising or its designee the Manuals used in the operation of the Franchised Business, and all other materials relating to the operation of the Franchised Business; and by operating a business similar to the Franchised Business in the same location as the prior Center.

36. Precision Franchising has been substantially and irreparably harmed by Defendant's conduct, and will continue to be substantially and irreparably harmed unless he is enjoined from operating an automotive sales business contrary to the post-termination obligations of the Agreement.

9

37. As a direct and proximate result of Defendant's breach, Precision Franchising has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in an amount that has yet to be determined. Precision Franchising is further entitled to specific performance under the Franchise Agreement.

## COUNT II
### (Federal Trademark Infringement)

38. The allegations of Paragraphs 1 through 37 are hereby incorporated by reference.

39. Defendant has breached the express terms of the Franchise Agreement by using the Precision Tune Marks outside the scope of the Agreement in connection with the advertisement and sale of unauthorized goods.

40. Defendant's past unauthorized use of Precision Franchising's Precision Tune Marks constitutes a violation of Lanham Act, 15 U.S.C. § 1114.

41. Precision Franchising has been substantially and irreparably harmed by the infringing conduct, and has sustained actual damages as a result of the Defendant's conduct in an amount that has yet to be determined.

## COUNT III
### (Common Law Trademark and Precision Trade Dress Infringement)

42. The allegations of Paragraphs 1 through 41 are hereby incorporated by reference.

43. Defendant has breached the express terms of the Franchise Agreement by using the Precision Tune Marks and Precision Trade Dress outside the scope of the Agreement in connection with the advertisement and sale of unauthorized goods.

44. The Precision Tune Marks and Precision Trade Dress are distinctive, and have developed a secondary meaning in the public mind in that consumers have come to know and to recognize the Precision Tune Marks as identifying the operation of service centers by Precision Franchising and its licensees. The Precision Tune Marks and Precision Trade Dress have become known by the public as indicative of the goods and services provided by Precision Franchising and its licensees, and have acquired valuable goodwill belonging to Precision Franchising.

45. Defendant has infringed the Precision Tune Marks and Precision Trade Dress. In addition, Defendant has unjustly enriched himself at Precision Franchising's expense in violation of Lanham Act, 15 U.S.C. § 1125(a).

46. Precision Franchising has been substantially and irreparably harmed by Defendant's conduct, and has sustained actual damages as a result of Defendant's conduct in an amount that has yet to be determined.

## COUNT IV
### (False Designation of Origin)

47. The allegations of Paragraphs 1 through 46 are hereby incorporated by reference.

48. Defendant's unauthorized use of the Precision Tune Marks and Precision Trade Dress in connection with the advertisement and sale of unauthorized goods at the Center prior to termination of the Agreement constituted a false designation of origin or a false impression that the unapproved goods were sponsored by, approved by or otherwise associated with Precision Franchising and the PRECISION TUNE AUTO CARE® system in violation of Lanham Act, 15 U.S.C. § 1125(a).

11

49. Precision Franchising has been substantially and irreparably harmed by Defendant's conduct, and has sustained actual damages as a result of the Defendant's conduct in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Precision Franchising prays that the Court:

A. Enter a judgment in favor of Precision Franchising for the damages it has incurred as a result of the breaches of the Agreement by Defendant;

B. Award Precision Franchising its lost profits;

C. Enter an injunctive order directing Defendant to comply with his post-termination obligations under the Agreement, including enjoining Defendant from operating an automotive service business pursuant to the geographic restrictions in the Agreement and using Precision Franchise's Precision Tune Marks and Precision Trade Dress;

D. Award Precision Franchising pre- and post-judgment interest;

E. Award Precision Franchising its costs and attorneys' fees incurred in connection with this action pursuant to Paragraph 17.2 of the Agreement;

F. Award Precision Franchising such other relief as the interests of justice may require.

Respectfully submitted,

PRECISION FRANCHISING LLC

BY: /s/ Bassam N. Ibrahim

Bassam N. Ibrahim (VA Bar No. 43353)
S. Lloyd Smith (*pro hac vice* pending)
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street
Suite 500
Alexandria, Virginia 22314
Tel. (703) 836-6620
Fax: (703) 836-2021
Bassam.ibrahim@bipc.com
Lloyd.smith@bipc.com
Attorneys for Plaintiff

DATE: 8/17/12